## Lyon v. McGuffey.

Under the acts of 1836 and 1840, a mechanics' lien on an equitable estate attaches to the subsequently acquired legal estate in the same manner, and has the same priority as the lien of a judgment.

A judgment for purchase money after the legal title is in the defendant, has no priority to a lien on his previous equitable title, unless entered at the time of the conveyance, or so soon after that the entry of the judgment and the conveyance constitute one transaction.

Where the conveyance was on the 29th of June, and judgment was entered on the 16th. of July, under a warrant executed previously to the conveyance, they do not constitute one transaction so as to give the judgment precedence of other liens on an estate held by the defendant under articles.

APPEAL from the Common Pleas of Clarion county.

*Sept.* 30.   Case stated on the distribution of the proceeds of a sheriff's sale.   A mechanics' lien was filed by the plaintiffs against Newell, the defendant in this execution, within six months after the work done, and materials furnished between March 1st and July 1st, 1842.   Under this, the sheriff's sale was made.   At the time the work was done, (the particular date is not mentioned,) Newell had purchased the land by articles of agreement with Morrell, to whom, on the 1st of April, he had given judgment notes for the purchase money.   On the 29th of June, Morrell procured a deed from the holder of the legal title, to Newell.   On the 16th of July, judgment was entered on these notes, which judgment was assigned to the defendant below.

The court below gave judgment for the plaintiffs.

*Lathry* and *Galbraith*, for appellant.—By the act of 1840, the purchaser under a mechanics' lien has no greater estate than the defendant at the time the building was commenced.   Of course a lien is not acquired on any greater estate.   The defendant had but an equitable estate on which the lien attached.   Had the judgment been entered simultaneously with the conveyance of the legal title, it would have had priority to all other liens against the defendant's land; the effect of the delay was merely to postpone it to such liens as were intermediate between it and the conveyance.

*Foster* and *Sutton*, contrà.—The purchaser takes subject to the lien for the unpaid purchase money, for the act confines the estate sold, to that owned at the commencement of the building.   Evans *v.* Montgomery, 4 Watts and Serg. 218.; O'Conner *v.* Warner, 4 Watts & Serg. 223; Kauffelt *v.* Bower, 7 Serg. & Rawle, 64; Bear *v.*

Whisler, 7 Watts, 147; Semple *v.* Burd, 7 Serg. & Rawle, 286. But at all events it is settled, that a judgment for the purchase money entered after a conveyance of the legal title, has no priority to liens on the previous equitable estate. Brown *v.* McCormick, 6 Watts, 60.

*Oct.* 5.   COULTER, J.—By judicial construction of the act of Assembly of the 17th of March, 1806, relating to the lien of mechanics and material men, the fee-simple of the ground on which the buildings were erected was subjected to the lien for work done and materials furnished, where the erections were made by a tenant for life or for years.   The case of Savoy *v.* Jones, 2 Rawle, 350, and the case of Holdship *v.* Abercrombie, 9 Watts, 52, established the principle too firmly to be shaken or overturned except by legislative interference.   Although these cases were somewhat startling to many of the profession, they were the legitimate result of the statute itself. It is not to be questioned, but that hardship and injustice would accrue to the remainder man, in many instances, by the operation of this rule of law.   The last decision made at September Term, 1839, it may be presumed, brought before the legislative mind in stronger and bolder relief the consequences of the act of 1806, than had occurred to the legislature at the time the statute was enacted.   The act of 1836, on the same subject, imbodied the provisions of the act of 1806 on which the decisions were founded; and although no judicial construction was given to that act in this respect, as all the cases decided had occurred before its passage, yet there is little, if any doubt, but that it would have received the same construction if the legislature had not interposed the provisions of the statute of the 28th of April, 1840, passed at the next session after the decision of the case of Holdship *v.* Abercrombie.   By that act it was provided, that the lien created by the act of 16th of June, 1836, should not be construed to extend to any other or greater estate in the ground on which any building might be erected, than that of the person in possession at the time of commencing the building, and at whose instance the same was erected.   In the case before the court, the work was done, and the materials furnished after the passage of that statute.   As this case, therefore, is under its full dominion, we must inquire on what interest or estate of Thomas F. Newell the lien of the mechanics or material men attached, in order to resolve the question of priority between them and the judgment creditors.

Newell purchased the lot on which the buildings were erected, by written articles of agreement from David Morrell, and on the 1st of

April, 1842, gave his judgment notes to him for $450 of the purchase money. The date of the agreement is not set forth in the case stated, but we must presume it was prior to or at the time of the execution and delivery of the notes, as the work was commenced at that time, and finished the first of July of the same year. The liens were filed within six months, so as to charge the building and ground from the commencement of the work. The deed for the lots was delivered by Morrell to Newell on the 29th of July, 1842, and no judgment was entered on the notes on the 16th of July following.

It is contended by the judgment creditor that the act of 1840 restrained and limited the operation of the mechanics' lien to the equitable interest alone, which Newell had and held at the time of the commencement of the work on the 1st April. In the decision of this cause, it is not intended to deny that the legislature designed the act of 1840 to operate on equitable estates. But they clearly could not have intended to wither the mechanics' lien into more diminutive importance than the lien of a judgment under the circumstances, or deprive it of the incidental force which a judgment possesses. The hard-handed and industrious man, who expends his labour in the erection of buildings, if the law concedes to him any lien, is entitled to one of equal effect and power with the lien of any other creditor who obtains a judgment. The legislature did not, could not, design to deprive him of any of the advantages of a judgment. They merely intended to prevent his lien from operating beyond the sphere in which a judgment would be effectual. It has been determined by this court that a judgment, obtained against a person holding the equitable estate, attaches to the legal title the moment it vests in the same person, and has priority over a mortgage executed by the judgment debtor after he acquires the legal estate. Lynch v. Dearth, 2 Penna. Rep. 101. There is nothing peculiar in the character of a judgment to give it this power; nothing which does not belong to the lien of the mechanic; which, being of as high grade and import, opens to embrace the legal title the moment it vests in the same person, and holds it as firmly as it bound the equity. The mechanics' lien being the first that attached to the equity, as an inseparable incident and attribute, bound also the legal title as soon as it vested.

The counsel of the judgment creditor, however, contended that his judgment being for the purchase money, was entitled to preference on that ground. But the act of 1836 provides that the mechanics' lien shall have a preference over every other lien which attaches to the buildings or ground subsequently to the commence-

ment of the buildings. Under the operation of this clause the argument loses all its force, even if otherwise entitled to weight. But in order to give a judgment for the purchase money any peculiar merit, it must be entered at the same time the deed is delivered, or so near to it as to give to the transaction a character of unity. Love *v.* Jones, 4 Watts, 465. In this case the judgment for the purchase money was not entered until ten days after the deed was delivered, thus divesting the case of every feature of one and the same transaction. The liens of the mechanic and material men are entitled to preference over the judgments enumerated in the case stated, and the judgment of the court below being in their favour is affirmed.

Judgment affirmed.